**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **11-01041-dd**

### ORDER DENYING CONFIRMATION OF CHAPTER 13 PLAN

The relief set forth on the following pages, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/12/2011**



Entered: 07/13/2011

                                                            David R. Duncan
                                                            US Bankruptcy Judge
                                                            District of South Carolina

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 11-01041-DD |
| Rheida Loraine Prince, | Chapter 13 |
| Debtor. | **ORDER** |

This matter is before the Court for confirmation of Rheida Loraine Prince's ("Debtor") chapter 13 plan ("Plan") filed February 18, 2011. An Objection to Confirmation was filed by Vanderbilt Mortgage and Finance, Inc. ("Vanderbilt") on March 10, 2011, and Debtor filed a Reply to Vanderbilt's Objection on March 24, 2011. A confirmation hearing was held on June 20, 2011. Following the hearing, the Court entered an Order Denying Confirmation on June 22, 2011, and an Amended Order Denying Confirmation on July 1, 2011. These were both short orders referencing findings made on the record. Debtor filed a Motion to Reconsider or alternatively, for express findings of fact, on July 5, 2011. The Court entered an Order vacating the Amended Order Denying Confirmation on July 8, 2011. The Court now makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

Debtor filed for chapter 13 relief on February 18, 2011. Debtor is employed as a certified nursing assistant earning net income of $1,401.00 per month, according to her Schedule I. Debtor's Schedule J expenses equal $733.00 per month, leaving Debtor with disposable income of $668.00 per month. Debtor's 60-month Plan proposes to pay $532.00 per month to the chapter 13 trustee for distribution to creditors.

Debtor's Schedule D discloses $66,191.00 of secured debt, comprised entirely of debts for a 1999 mobile home, encumbered by a lien held by Vanderbilt, and a 2003 Ford Windstar

van. Debtor has unsecured debt of $14,820, according to her Schedule F. Debtor's Schedule D indicates that the total amount of Vanderbilt's claim on the mobile home is $56,656, but Debtor proposes to value Vanderbilt's lien at $15,000. Debtor proposes to pay Vanderbilt $285.00 per month, plus 5.25 percent interest, until the $15,000 claim is paid in full.

The mobile home subject to Vanderbilt's lien was purchased on June 29, 2000 by Carnell Prince, Debtor's father-in-law. Debtor's name was not on the sales contract with Vanderbilt and does not appear on the certificate of title for the mobile home. There is some dispute between the parties regarding whether Mr. Prince intended Debtor to continue to occupy the home, but Debtor concedes that the mobile home was originally purchased to provide Mr. Prince's ill wife with a place to live. In fact, Debtor's testimony was that Mr. Prince's reason for purchasing the home was to care for his wife and provide his wife with a home. The terms of Mr. Prince's contract with Vanderbilt provide for monthly payments of $638.98 over a 30 year period. The contractual interest rate is 12.798 percent.

At the time of the purchase of the mobile home, Debtor was married to Mr. Prince's son and moved into the home with her husband to care for Mr. Prince's wife. His wife is now deceased. Debtor and Mr. Prince's son have since separated, and Mr. Prince's son left the home. Debtor has lived in the home continuously since it was purchased in 2000. Mr. Prince has never lived in the home. The mobile home is located on land owned by Debtor's parents.

Debtor testified at a deposition taken during state court litigation between the parties and at the confirmation hearing that she had an agreement with Mr. Prince that she would make payments on the mobile home and that when the home was fully paid for, Mr. Prince would transfer ownership to her. It is not clear when this "agreement" with Mr. Prince was made. In 2007, Mr. Prince signed a document titled "voluntary surrender" in favor of Vanderbilt and

requested that Vanderbilt take possession of the mobile home. Debtor testified that she has asked Mr. Prince on several occasions to transfer title of the mobile home to her, but that he refused to do so.

Debtor claimed that she made payments on the mobile home directly to Vanderbilt, continuously from 2000 until 2008, when Vanderbilt stopped accepting payments.[1] Debtor also testified that she paid for the property taxes and insurance on the home. However, with the possible exception of the first year Debtor was in the home, it appears from a statement of account that Vanderbilt paid the taxes every year and then received reimbursement from Debtor, contrary to the provisions of the sales contract. Insurance on the home was in Mr. Prince's name. Debtor testified that she and Mr. Prince went to the insurance office together, and that Mr. Prince obtained the insurance and she paid for it. However, testimony of a Vanderbilt representative indicated that because the insurance purchased by Mr. Prince lapsed each year, Vanderbilt was forced to purchase insurance for the mobile home every year beginning in 2004. Debtor has not purchased insurance for the mobile home since 2008.

Debtor's testimony at the hearing on confirmation included a number of other unclear and sometimes conflicting statements, especially when compared to her testimony at the earlier deposition taken by Vanderbilt. For example, Debtor testified at the deposition that she then held $12,000 in a bank account in her sister's name, which represented the amount of payments she owed to Vanderbilt on the mobile home after Vanderbilt stopped accepting her payments. However, she testified at the hearing that her grandmother died in 2008 or 2009,[2] and that she used some part of the money from the account to pay for the funeral. When questioned about the timing of this payment, she stated that she had first filed a claim with her grandmother's life

---

[1] At one point during her testimony, Debtor testified that Vanderbilt stopped accepting her payments in 2008, but later claimed she made payments until Vanderbilt began refusing to accept them in 2009.
[2] Debtor could not remember the exact date of her grandmother's death.

insurance and only had to pay for the funeral much later, after the life insurance claim was denied. She also claimed that additional sums of money that had been in her sister's account could no longer be accounted for.

Debtor's testimony, while confusing and often conflicting, was that Vanderbilt had stopped accepting payments at some point in 2008 but had begun accepting them again later that year. Debtor did not otherwise admit that she was behind on payments to Vanderbilt. Testimony from a Vanderbilt representative indicated that no payments had been made since March 2008. The payoff on the loan is now almost $89,000. Vanderbilt brought a claim and delivery action against Debtor and her parents in 2009, after Debtor and her husband separated and Mr. Prince had requested that Vanderbilt take possession of the mobile home. Debtor's bankruptcy was filed a few days before the scheduled trial on the claim and delivery action.

## CONCLUSIONS OF LAW

### I.    Resulting Trust

Debtor argues that she has an equitable interest in the mobile home because she has lived in it continuously since 2000 and made payments on it for many of those years. Debtor claims this interest arises based on the doctrine of resulting trust and cites *In re Rivers-Jones*, No. 07-02607-jw (Bankr. D.S.C. Sept. 4, 2007) in support of her position. Vanderbilt replies that no resulting trust arises, that the mobile home is not property of the estate, and that Debtor is not permitted to include the mobile home loan in her Plan. Vanderbilt also asserts that Debtor's case was filed in bad faith. Vanderbilt filed a Motion to Dismiss with Prejudice on March 10, 2011.

11 U.S.C. § 541 defines property of the estate and specifies that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Debtor claims that based on a resulting trust arising under state law, she has an equitable

interest in the mobile home, such that the mobile home is property of her estate. A resulting trust is an equitable doctrine. The South Carolina Supreme Court has stated:

> Equity devised the theory of resulting trust to effectuate the intent of the parties in certain situations where one party pays for property, in whole or in part, that for a different reason is titled in the name of another. The general rule is that when real estate is conveyed to one person and the consideration paid by another, it is presumed that the party who pays the purchase money intended a benefit to himself, and accordingly a resulting trust is raised in his behalf. The presumption, however, may not be in accord with the truth. It may be rebutted and the actual intention shown by parol evidence.

*Hayne Fed. Credit Union v. Bailey*, 327 S.C. 242, 248–49, 489 S.E.2d 472, 475 (1997) (internal citations omitted). Thus, when property is titled in the name of one person but is paid for by another, a presumption arises that a benefit to the paying party was intended. *See id.* If this presumption is not rebutted, a resulting trust arises in favor of the paying party. *See id.* However, if the presumption is rebutted by a showing of contrary intent on behalf of the parties, no resulting trust arises. *See id.*

South Carolina law is clear that a resulting trust arises, if at all, only at the time of the purchase of the land or good at issue. *Larisey v. Larisey*, 77 S.E. 129, 130 (S.C. 1913) (citing *Surasky v. Weintraub*, 73 S.E. 1029, 1031 (S.C. 1912)). A resulting trust "cannot arise from subsequent transactions, change of circumstances or intention." *Id.* "Such a trust must arise, if at all, at the time the purchase is made. The funds must then be advanced and invested. It cannot be made by after advances, or funds subsequently furnished. It does not arise upon subsequent payments, under a contract by another to purchase." *Surasky v. Weintraub*, 73 S.E. 1029, 1031–32 (S.C. 1912) (citing *Olcott v. Bynum*, 17 Wall. 59, 21 L.Ed. 570 (1872)).

In the present case, the mobile home was titled in Mr. Prince's name, and he made a significant down payment on the mobile home purchase, according to the Manufactured Home Retail Installment Contract that was introduced into evidence at the confirmation hearing.

Debtor made the ongoing monthly payments.  Debtor conceded that the mobile home was originally purchased to provide Mr. Prince's sick wife with a place to live and be cared for.  Evidence was also presented that Mr. Prince refused to transfer ownership of the mobile home to Debtor or assist Debtor with assumption of the debt to Vanderbilt unless she paid off the balance of the loan on the mobile home.  Mr. Prince signed a voluntary surrender of the home and requested that Vanderbilt take possession of it in 2007.  Debtor testified that Mr. Prince never asked her to vacate the mobile home.  However, it is not necessary that such a request have been made, as ample evidence was presented which made Mr. Prince's intent with respect to his ownership of the mobile home clear.  Mr. Prince did not intend for the mobile home to be owned by Debtor.

An examination of *In re Rivers-Jones*, No. 07-02607-jw (Bankr. D.S.C. Sept. 4, 2007) does not affect the Court's conclusion.  In *Rivers-Jones*, the debtor's grandmother financed the purchase of a mobile home for the debtor and her husband because they "were unable to obtain financing to purchase the Mobile Home themselves." *Rivers-Jones*, at 1.  After the debtor filed a chapter 13 bankruptcy case, Green Tree, a lien holder on the mobile home, objected to confirmation of the debtor's chapter 13 plan because the debtor lacked privity with Green Tree and because the debtor's plan attempted to value Green Tree's lien. *Id.* at 3.  The Court found that a resulting trust arose in the debtor's favor because the debtor had made all payments on the mobile home, because the parties intended the debtor to have an ownership interest in the mobile home, and because the grandmother did not claim any ownership interest in the mobile home. *Id.* at 6.  This is clearly a different situation than the one currently presented.  There is no evidence that the parties intended for Debtor to have an ownership interest in the mobile home; in fact, there is evidence to the contrary, as Mr. Prince refused Debtor's request that he transfer

ownership to Debtor on numerous occasions, insisting instead that she pay for the mobile home in full before obtaining ownership. *Rivers-Jones* is clearly distinguishable from Debtor's case. No resulting trust arose as to the mobile home and Debtor has no equitable interest in the mobile home. Debtor's Plan provides for valuation and payment of Vanderbilt's lien on property which is not part of her estate; as a result, the Plan cannot be confirmed.

## II.  Good Faith

The Court additionally finds that the Plan was not proposed in good faith. Debtor appeared, at best, to be less than credible when testifying at the confirmation hearing. Debtor's testimony at her 2010 deposition conflicted with her testimony at the confirmation hearing in a number of respects. Debtor testified at the 2010 deposition that she had $12,000 in a bank account, which she had saved to pay Vanderbilt those payments she had missed. However, at the confirmation hearing Debtor testified that her grandmother died in 2008 or 2009 and that she had to take money out of the account to pay for her grandmother's funeral. When questioned further, Debtor stated that she did not have to pay for the funeral until well after the funeral actually occurred, because she had submitted a claim to her grandmother's life insurance and was waiting to determine whether the claim would be denied. Debtor now claims that the balance of the $12,000, after payment of the funeral expenses, is unaccounted for.

Significant confusion also occurred with respect to an extension of repayment agreement signed by Debtor and Mr. Prince. At the confirmation hearing, Debtor testified that Vanderbilt instructed her to sign the document. However, at her deposition she stated that no one at Vanderbilt told her to sign the document; instead, Debtor and Mr. Prince had an agreement that if she signed the document, Debtor could stay in the home after her husband left. Debtor was also either apparently confused or evasive about certain dates, especially relating to her mother-in-

law and grandmother's death and when certain documents were signed. Overall, Debtor's testimony was unreliable and difficult to comprehend.

Additionally, Debtor failed to make all payments to Vanderbilt and otherwise comply with the terms of the sales contract. While it may be true that Vanderbilt refused to accept Debtor's payments for some period of time, Debtor's testimony at the confirmation hearing was that Vanderbilt only refused to accept payment for a few months. However, Debtor has failed to make payments on the loan for almost three years. Debtor also repeatedly failed to comply with the terms of the contract with Vanderbilt, in that she did not pay property taxes when they became due. Instead, Vanderbilt was forced to pay those taxes and seek reimbursement from Debtor. Debtor also failed to maintain insurance on the mobile home. From the testimony presented at the confirmation hearing, the Court cannot find that Debtor's Plan was proposed in good faith.

## **CONCLUSION**

For the reasons set forth above, no resulting trust arises in Debtor's favor, and Debtor has no equitable interest in the mobile home. As a result, the mobile home is not property of Debtor's estate. Further, Debtor's Plan is not proposed in good faith. Therefore, confirmation of Debtor's Plan is denied. Debtor is given ten (10) days from the date of entry of this order within which to propose and file an amended plan. Prior to the filing of an Amended Plan, Debtor's counsel must contact Chambers to obtain a date and time for the confirmation hearing on the amended plan, and notice of the hearing on that amended plan must be served on all parties in interest by Debtor. If no amended plan is filed within ten (10) days, this case may be dismissed without further notice or hearing.

AND IT IS SO ORDERED.